Filed 9/26/13  P. v. Ortiz-Camacho CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| THE PEOPLE, | C070844 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F0220) |
| v. | |
| OSCAR EDGARDO ORTIZ-CAMACHO, | |
| Defendant and Appellant. | |

A jury convicted defendant Oscar Edgardo Ortiz-Camacho of possessing a false compartment with the intent to smuggle drugs (Health & Saf. Code, § 11366.8, subd. (a)) and driving without a valid license (Veh. Code, § 12500, subd. (a)).  Sentenced to a term in state prison, defendant contends the trial court erred prejudicially by instructing the jury it could consider dog sniffing evidence to prove identity.  We affirm the judgment but we direct the trial court to correct a clerical error on the abstract of judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of September 13, 2011, California Highway Patrol (CHP) Officer Fred Lazo saw a dark colored Mitsubishi Galant following another car too

1

closely, then speeding up to 60 miles per hour, while heading eastbound on State Route 36, a "very dangerous" rural road in Trinity County.  Officer Lazo conducted a traffic stop of the Mitsubishi.

Officer Lazo asked the driver, defendant, for his license and registration. Defendant produced the registration, but not an American driver's license; instead, he showed the officer a Mexican consulate card and a Mexican driver's license, which does not permit lawful driving in the United States except for visitors from Mexico carrying Mexican passports.

Defendant said he and his wife (the front seat passenger) lived in Gerber, they had been on their way to Eureka for an overnight visit with a friend, but he was now taking his wife to the hospital in Red Bluff for emergency medical treatment.  When Officer Lazo offered to call an ambulance, defendant and his wife declined, and his wife soon said she felt better because she had taken her medication.[1]

Officer Lazo decided to tow the car because defendant lacked a valid driver's license.  As required by CHP procedure, he conducted an inventory search of the car.  He detained defendant and defendant's wife in the backseat of his patrol car.

Officer Lazo found three empty plastic baggies under the front passenger seat; one had a Playboy bunny on it.  In his experience, such baggies, especially when marked with symbols such as Playboy bunnies, usually contain controlled substances.  Defendant and

---

[1]  We take judicial notice that Gerber and Red Bluff are in Tehama County.  (Evid. Code, §§ 452, subd. (h), 459, subd. (a).)

Defendant asserts:  "Officer Lazo *learned* [defendant's wife] was ill and [defendant] was taking her to the hospital in Red Bluff."  (Italics added.)  This misstates the evidence.  Defendant made that claim, but Officer Lazo evidently found it inconsistent with the conduct of defendant and his wife, and no other evidence to support the claim was offered.

his wife denied ownership or knowledge of the baggies; they said they had recently bought the car and had never cleaned it.

Under the rear seat, Officer Lazo found more baggies, which contained a small amount of marijuana; one had a marijuana leaf symbol on it.

After contacting a CHP officer with more experience as to hidden compartments, Officer Lazo decided to search the Mitsubishi for such compartments. He removed fuse panels on the side of the dashboard and opened the glove box; he observed nonstandard materials inside both spaces. Then he checked for the presence of an air bag; although air bags are usually easy to remove from their compartments, in this case there was a piece of plywood inside the compartment which he had difficulty prying off before he could remove the air bag.

Once Officer Lazo removed the air bag, he saw a brown paper bag containing a large amount of currency packaged in bundles, and baggies with symbols on them resembling the baggies found elsewhere in the car. He asked defendant who owned the money; defendant said he did not know. Officer Lazo later counted the money and found that it totaled $20,250.

After Officer Lazo transported defendant to county jail and logged the evidence at the Weaverville station, CHP Officer Douglas Mertz, a K-9 handler whose dog was trained and certified in narcotics detection with an estimated 85 to 95 percent rate of accuracy, conducted a controlled dog sniff of the recovered currency. Officer Mertz first had his dog sniff the kitchen cabinets at the station; the dog did not alert to an odor of narcotics. Another officer placed the currency in a kitchen cabinet and Officer Mertz reran the test; this time the dog alerted to the odor of narcotics.

A second search of defendant's car conducted with a search warrant found paperwork for an August 2011 smog check, bearing defendant's name, in the glove box. On the right rear floorboard, the officers found a notebook which contained defendant's

wife's name, and the addresses, with directions to reach them, of "known marijuana gardens" in Shasta County.

Defendant did not testify or present evidence. His counsel argued that the People had not proved defendant had the intent to transport drugs in the hidden compartment of the Mitsubishi or even that he knew there was one.

DISCUSSION

I

The People requested that the trial court instruct the jury on the use of dogs in drug detection with a modified version of CALCRIM No. 374, the pattern instruction on dog tracking evidence.[2] As given orally, the instruction read: "You have received evidence about the use of a drug detection dog. You may not conclude that the defendant is the person who committed the crime [] based only on the fact that a dog indicated the presence of a scent of drugs. Before you may rely on dog drug detection evidence, there must be, one, evidence that the dog is trained and certified in the detection of the scent of drugs; and two, other evidence that the dog accurately detected the scent of a drug. This other evidence does not need to independently link the defendant to that crime."[3]

---

[2] CALCRIM No. 374 states: "You have received evidence about the use of a tracking dog. You may not conclude that the defendant is the person who committed the crime based only on the fact that a dog indicated the defendant [or a location]. Before you may rely on dog tracking evidence, there must be: [¶] (1) Evidence of the dog's general reliability as a tracker; [¶] AND [¶] (2) Other evidence that the dog accurately followed a trail that led to the person who committed the crime. This other evidence does not need to independently link the defendant to the crime. [¶] In deciding the meaning and importance of the dog tracking evidence, consider the training, skill, and experience, if any, of the dog, its trainer, and its handler, together with everything else that you learned about the dog's work in this case." CALCRIM does not have an instruction on the use of dogs in drug detection.

[3] As proposed, the instruction used the expressions "the presence of a drug" and "the odor of a drug" and otherwise tracked CALCRIM No. 374 almost exactly. In response to defense counsel's objection, the court inserted the expressions "the presence

4

Defendant contends that this instruction improperly and prejudicially informed the jury it could consider the dog sniff evidence to prove identity.  We disagree.  The instruction spoke to identity only so far as it told the jury *not* to conclude defendant was the person who committed the crime merely because a dog had alerted to the scent of drugs on money that came from the hidden compartment.  Thus, if anything, the instruction was beneficial to defendant.  (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1224.)

Defendant relies only on *People v. Swearington* (1977) 71 Cal.App.3d 935.  That case is distinguishable because the jury was expressly and erroneously instructed that it could consider other acts evidence to prove identity, which was not in dispute.  (*Id*. at p. 947.)  Here, the instruction did not do so.

In any event, even if the instruction should not have been given, any error was harmless.  Defendant did not dispute that he was the person who drove the Mitsubishi when it was found to contain a hidden compartment and other evidence of drug smuggling.  He argued at trial, rather, that he did not intend to use the hidden compartment to transport drugs because he did not know that the compartment and its contents (or the baggies found elsewhere in the car) were there.  The dog sniff evidence was not necessarily inconsistent with defendant's theory of trial, because it did not show that defendant knew anything about the money found in the car:  it showed at most that the money had been used in connection with drug sales by someone.

But the undisputed evidence established:  (1) defendant had possessed the car for some time before the day of Officer Lazo's traffic stop, as shown by the paperwork found in the glove box; (2) his initial statement to Officer Lazo (that he was speeding so as to rush his wife to a distant hospital) quickly proved incredible, thus casting doubt on the

---

of a scent of drugs" and "the scent of a drug" and noted that it was giving the instruction over objection.  The court also omitted the final paragraph of the pattern instruction.

credibility of his claims that he had never cleaned the car and did not know what was in it; and (3) there was a notebook in the car bearing defendant's wife's name, the addresses of marijuana gardens, and driving directions to them. In light of this evidence, the jury could reasonably have concluded that defendant must have known about the hidden compartment, and therefore must have intended to use it to smuggle drugs, even without considering the dog sniff evidence.

## II

We have identified a clerical error on the abstract of judgment that requires correction. Defendant was convicted of Health and Safety Code section 11366.8, subdivision (a). The abstract of judgment incorrectly indicates that defendant was convicted of Health and Safety Code section 11336.8, subdivision (a). We direct the trial court to prepare a corrected abstract of judgment.

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to indicate that defendant was convicted of Health and Safety Code section 11366.8, subdivision (a), and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


       NICHOLSON     , J.


We concur:


      RAYE      , P. J.


      MURRAY   , J.